Delores **GERLACH, Hilda S. Howard, Barbara A. Fetter, Dawn M. Jones, Marianne L. Tittl, Rosemary Kurr, Mary M. Cline, June D. Timpf, Barbara J. Baker, Nellie Reiter, Elaine Graul, Kathleen Swantek, Irene Wojewodzic, and all others similarly situated, Plaintiffs,**

v.

**MICHIGAN BELL TELEPHONE COMPANY, a Michigan Corporation, Defendant.**

Civ. A. No. 7–71715.

United States District Court,
E. D. Michigan, S. D.

April 4, 1978.

Jessica R. Cooper, Cooper & Russu, Birmingham, Mich., for plaintiffs.

William M. Saxton, Virginia F. Metz, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

### JOINER, District Judge.

This is a case involving sex discrimination in employment. Plaintiffs are 135 women who are or have been employed by the defendant in the job classification of Engineering Layout Clerk. Defendant, Michigan Bell Telephone Company, is a Michigan corporation with its principal office in Detroit. The defendant is alleged to have paid wages and given promotions inferior to the wages and promotions received by plaintiffs' male counterparts, employed by the defendant in the job classification of Field Assistant, solely on the grounds of plaintiffs' sex in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, the Equal Pay Act of 1963, 29 U.S.C. § 206(d), the Michigan Civil Rights Act, M.C.L.A. § 37.2101 *et seq.,* the Michigan Fair Employment Practices Act, M.C.L.A. § 423.301 *et seq.,* and defendant's common law duty not to discriminate against women in the payment of wages derived from the Michigan penal code, M.C.L.A. § 750.556.

Defendant has moved to dismiss all but six of the plaintiffs from the Equal Pay Act cause of action, to dismiss the plaintiffs' claims for compensatory and so-called punitive damages under each of their state causes of action, or, in the alternative, to dismiss each of the state causes of action for lack of pendent jurisdiction. Plaintiffs have moved for default judgment on their cause of action under the Civil Rights Act of 1964 and on their cause of action under the Equal Pay Act of 1963 as to the six women not addressed in defendant's motion to dismiss. For reasons set forth more fully herein, the defendant's motion to dismiss plaintiffs' claims under the Michigan Civil Rights Act, the Michigan Fair Employment Practices Act, and common law tort is granted.[1] Defendant's motion to dismiss all but six of the plaintiffs from the Equal Pay Act cause of action is treated as a motion for summary judgment and granted as to any plaintiff who works in an "establishment" maintained by defendant which does not also employ a Field Assistant. Plaintiffs' motion for default judgment is denied upon certain conditions.

As Engineering Layout Clerks, the plaintiffs analyze data related to the performance of a "job order" such as installing telephone poles and lines. The work performed by all Engineering Layout Clerks is considered to be a function of the Engineering Plant Department of the Michigan Bell Telephone Company as a whole; however, each layout clerk performs his or her work at a specific office maintained by the defendant to serve a local geographic area. The day to day supervisory responsibility for the offices in which plaintiffs are employed is vested in the management personnel at the various local offices. Local management responsibility is fairly comprehensive and includes such decisions as when employees will go on vacation, as well as what work assignments employees will work on. Each plaintiff's personnel file is kept at the local office to which she is assigned. There are 31 such offices employing Engineering Layout Clerks throughout the state of Michigan. The parties disagree on how many of those offices have also employed Field Assistants during the time period involved in this litigation.

---

1. Accordingly, it becomes unnecessary to rule on defendant's motion to dismiss plaintiffs' claims for compensatory and punitive or exemplary damages since all such claims have been dismissed.

Some of the plaintiffs have been either "loaned" on short notice from their assigned office to other offices for one or two week intervals or have performed "mailed-in" assignments from other offices. Engineering Layout Clerks frequently receive at least a portion of their training at a central location. Neither being "loaned" nor working on "mailed-in" assignments requires traditional training or different tools nor does it entitle the employee being loaned to different pay. Plaintiffs receive their pay through a central office. The base rate of pay is uniform in accordance with the applicable collective bargaining agreement. Variations in pay are introduced from office to office by cost of living additions which differ according to geographical location.

*Equal Pay Act Claim.*

The defendant's motion to dismiss all but six of the plaintiffs from the claim under the Equal Pay Act of 1963 was supported by an affidavit. Plaintiffs' responsive memorandum in opposition to defendant's motion was also supported by affidavits. Pursuant to F.R.C.P. 12(b), defendant's motion to dismiss will be treated as one for summary judgment under F.R.C.P. 56.

Title 29 of the United States Code § 206(d) states in pertinent part:

> No employer having employees subject to any provisions of this section shall discriminate, within any *establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees in such *establishment* at a rate less than the rate at which he pays wages to employees of the opposite sex in such *establishment* for equal work . . . (emphasis added)

The issue raised by defendant's motion for summary judgment is whether the term "establishment" refers to an individual local office to which an Engineering Layout Clerk is primarily assigned or whether "establishment" refers to the Michigan Bell Telephone Company as a functionally cohesive unit. The significance of this question rests on the fact that only a very small number of Field Assistants have been employed by the defendant in offices in which one of the plaintiffs has also been employed during the time period relevant to this litigation. If "establishment" refers to the defendant as a unit then all plaintiffs, regardless of which office they have been employed in, satisfy the terms of 29 U.S.C. § 206(d). However, if "establishment" refers only to the local offices maintained by defendant, then only those few plaintiffs who have been employed in an office which also employed a Field Assistant during the relevant period of time are entitled to sue. Although the oral argument of counsel makes it clear that the right to sue of a substantial number of plaintiffs hinges on this issue, this court is precluded from determining the exact number involved since there is a genuine factual dispute as to the number of Field Assistants employed during the relevant time period and the location of the office to which they were assigned. This court is not precluded, however, from rendering a partial summary judgment on the issue of the definition of the term "establishment."

The term "establishment" has not been expressly defined in the Fair Labor Standards Act. The United States Supreme Court, however, has considered the issue of whether the term "establishment", as used in 29 U.S.C. § 213(a)(2), refers to an entire business enterprise or only a distinct physical place of business. *Phillips v. Walling*, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1944).[2] The Court held that "establishment" means a distinct physical place of business. *Phillips, supra*, at 496, 65 S.Ct. 807. This holding was reaffirmed in *Mitchell, Secretary of Labor v. Bekins Van & Storage Co.*, 352 U.S. 1027, 77 S.Ct. 593, 1

---

**2.** At the time of the *Phillips* decision, 29 U.S.C. § 213(a)(2) provided in pertinent part, "The provisions of sections 206 and 207 of this title shall not apply with respect to—any employee employed by any retail or service *establishment* . . . ." (emphasis added).

L.Ed.2d 589 (1957).[3] Although the definition of "establishment" in *Phillips* was reached in the context of interpreting an exemption from the coverage of the minimum wage provisions of the Fair Labor Standards Act in as narrow a fashion as possible, that definition has been adopted by the Secretary of Labor for purposes of administering the coverage of the Equal Pay Act of 1963. 29 C.F.R. 800.108 (1976). *See* 29 C.F.R. 800.103. This interpretation by the Secretary, which preserves a single definition of the term "establishment" throughout the various sections of the Fair Labor Standards Act, comports with the general intent of Congress in adding the Equal Pay provision to the Fair Labor Standards Act rather than drafting an entirely new piece of legislation. As the committee report on the Equal Pay Act stated:

> Because of the long history and experience of Government and business and workers with the Fair Labor Standards Act, a simple expansion of that act to include the equal pay concept offers the most efficient and least difficult course of action.
>
> \*   \*   \*   \*   \*   \*
>
> . . . [C]ompliance should be made easier because both industry and labor have a long-established familiarity with existing fair labor standards provisions.

*1963 United States Code Congressional & Administrative News,* p. 688.

Plaintiffs urge this court to adopt the reasoning of the Fifth Circuit which distinguished the facts in *Phillips* from the facts in *Brennan v. Goose Creek Consolidated Ind. School District,* 519 F.2d 53 (5th Cir. 1975). In *Brennan* the plaintiffs, female high school custodians, brought suit against the school district under 29 U.S.C. § 206. The record in that case revealed that the central administration of the school district hired the janitors, determined their wages, assigned them to the school building in which they were to work, often switched their assignments from one building to another, and to a large extent controlled the work schedule and the janitors' daily duties in the various schools of the district. On the basis of this record, the court held that all of the schools in the district constituted one "establishment" for purposes of a lawsuit brought under § 206. *Brennan, supra,* at 58.

█ Engineering Layout Clerks work primarily at one office. They are not often switched from one office to another but are only loaned for brief periods. A substantial proportion of their supervision is provided in the local office. Thus, the plaintiffs in this case, unlike those in *Brennan,* have not established that the physical place of business to which they are assigned and in which they routinely work includes more than an individual office of defendant. Since the *Brennan* case, which was a close decision itself, is not analogous to the present case in this critical aspect the *Phillips* rationale requires the the term "establishment" refer to each individual office maintained by defendant in this case. Defendant's motion for summary judgment is, therefore, granted with respect to every plaintiff who works or worked in an establishment maintained by defendant which did not concurrently employ a Field Assistant during the time period relevant to this lawsuit. Within two weeks from the date of this opinion, counsel for the respective parties shall submit either a stipulation naming the plaintiffs who are dismissed from the Equal Pay Act cause of action pursuant to this opinion or a statement setting forth the names of each plaintiff whose status is in dispute and the substance of the dispute. An evidentiary hearing will be scheduled promptly to resolve any such dispute.

*State Law Claims.*

Defendant's motion to dismiss plaintiffs' state law claims raises the issue of whether this court has pendent jurisdiction over these claims, and, if so, whether that power should be exercised. The United States

---

**3.** The facts upon which the Court based its per curiam reversal in *Bekins* are set forth in the appendix to the circuit court's opinion at 231 F.2d 25 (9th Cir. 1956).

Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), held that pendent jurisdiction exists whenever there is a claim arising under the Constitution, laws, or treaties of the United States and the state and federal claims derive from a common nucleus of operative fact. *Id.* at 725–29, 86 S.Ct. 1130. The Court went on to say that pendent jurisdiction need not be exercised, even if it exists, if discretionary considerations contraindicate such action. *Gibbs* sets the broad guidelines by which this court is guided.

█ Plaintiffs' request that compensatory and punitive or exemplary damages be awarded under both the Michigan Civil Rights Act claim and their common law tort claim derived from M.C.L.A. § 750.556. The parties disagree over whether plaintiffs seek punitive or exemplary damages. However, regardless of how plaintiffs' prayer for damages is interpreted, it requires that the willfulness of defendant with respect to each plaintiff be proven. The state claims for punitive or exemplary damages would raise issues as to most of the plaintiffs' emotional states before and after the defendant's alleged discriminatory acts, the willfulness of defendant's alleged discrimination, and the proximate cause between defendant's willfulness, if any, and the injuries alleged. These elements of proof are not required in order to establish a claim under the Civil Rights Act and proof of willfulness is necessary under plaintiffs' Equal Pay Act claim only with respect to those few remaining plaintiffs who satisfy the terms of the statute. Thus, for the overwhelming number of plaintiffs, proof of willfulness is only required in order to prove the pendent state causes of action. The assumption of pendent jurisdiction over the state claims would inject substantial new issues into the proceedings. Even if these differences between the evidence required under the plaintiffs' state and federal claims were not enough to support a finding that there is not a common nucleus of operative fact under *Gibbs*, the differences are certainly enough to justify this court's refusal to exercise its discretion to hear the state claims under the teaching of *Gibbs*.

Aside from the differences in the factual inquiries required under the state and federal claims, the very difference in the remedies available under the state and federal law lead to the conclusion that dismissal without prejudice of the plaintiffs' state causes of action would be the wisest course of action. Plaintiffs cannot recover either compensatory or punitive damages under Title VII. *E.E.O.C. v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir. 1975), *vacated and remanded on other grounds*, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977); *Loo v. Gerarge*, 374 F.Supp. 1338 (D.Haw.1974); *Howard v. Lockheed-Georgia Co.*, 372 F.Supp. 854 (N.D.Ga.1974); and *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D. Calif.1973). Similarly the statutory language of the Equal Pay Act explicitly limits plaintiffs to the recovery of back pay and liquidated damages. 29 U.S.C. § 206(d). It would be inconsistent with and beyond the scope of federal policy to allow a state remedy not allowed under federal law. *Van Hoomissen, supra*, and *Phillips v. Carborundum Company*, 361 F.Supp. 1016, 1022 (W.D.N.Y.1973). Given the substantial differences in the nature of the factual inquiries required under the state and federal claims and the inconsistency of the remedies requested under the state and federal claims, the defendant's motion to dismiss the state claims involving the Michigan Civil Rights Act and common law tort is granted without prejudice to the filing of these claims in state court.

█ Plaintiffs' claim under the Michigan Fair Employment Practices Act raises no evidentiary issue greater in scope than those raised by plaintiffs' federal claims, supports no claim for damages inconsistent with the damages available under the federal law, and does not involve unsettled issues of state law. However, the interest of judicial economy would appear to be best served by hearing the three closely related state causes of action together rather than splitting them up between the state and

federal courts. Judicial economy was one of the foremost considerations cited in *Gibbs* as justifying a federal district court's refusal to exercise its discretion to assert pendent jurisdiction. For this reason plaintiffs' claim under the Michigan Fair Employment Practices Act is also dismissed from this lawsuit.

### Default Judgment and the Civil Rights Claim.

This motion raises the issue of whether defendant must answer certain counts contained in a complaint within 20 days after the service of the summons and complaint, pursuant to F.R.C.P. 12(a), even though the remaining counts of the complaint are the subject of a pending motion to dismiss and therefore need not be answered until 10 days after notice of the court's action on the motion, pursuant to F.R.C.P. 12(a)(1).

Plaintiffs initiated this lawsuit on July 13, 1977 by filing their complaint. Through a series of stipulated extensions of time and court orders, defendant was given until October 21, 1977 to answer or otherwise respond to plaintiffs' complaint. On October 21, 1977, defendant filed its motion to dismiss decided in the first portion of this opinion. This motion addressed counts three through six of plaintiffs' complaint but did not deal with counts one and two. Defendant has not otherwise responded to plaintiffs' complaint.

As to counts three through six of plaintiffs' complaint, defendant has correctly followed the requirements of F.R.C.P. 12(a) which specifies that a responsive pleading shall be served within 10 days after notice of the court's action on a motion permitted under subsection (b). However, F.R.C.P. 12 does not explicitly address the issue of whether the filing of a motion under F.R.C.P. 12(b) also alters the time within which the moving party must respond to claims in the complaint not addressed in the motion. The general language of the rule does not specify whether an answer shall be to the complaint as a whole or to each independent claim set forth in the complaint. Furthermore, there appears to be no case law which addresses this issue.[4] Defendant argues that it should be able to quickly narrow the scope of a lawsuit to those claims really in conflict before the court. While this court fully agrees with defendant's argument, their proposition presents no reason for delaying the progress of litigation with respect to those counts of a complaint which are not addressed by a motion filed under F.R.C.P. 12(b). Separate counts are, by definition, independent bases for a lawsuit and the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under F.R.C.P. 12(b).

The entry of a default judgment pursuant to F.R.C.P. 55(b) is a matter of discretion on the part of the trial court and not a matter of right. *Bavouset v. Shaw's of San Francisco*, 43 F.R.D. 296, 297 (S.D. Tex.1967). Since it does not appear that plaintiffs have been severely prejudiced by defendant's failure to answer counts one and two in a timely fashion and since default judgment is a harsh remedy, it appears appropriate to allow the defendant an opportunity to file its answer within 10 days from the date of this opinion. However, defendant shall pay the costs and attorney's fees incurred by plaintiffs to bring this motion as a condition to such belated filing. *Hanley v. Volpe*, 48 F.R.D. 387 (E.D. Wis.1970). If the answers are not filed and the costs and attorney's fees are not paid promptly upon proof by plaintiffs of the reasonable value thereof, the plaintiff may reapply for a default judgment.

In summary, the term "establishment" is held to refer only to a distinct physical place of business pursuant to *Phillips*. Defendant's motion for summary judgment is, therefore, granted with respect to every plaintiff who works or worked in an establishment maintained by defendant which did not concurrently employ a Field Assistant during the time period relevant to this

---

4. None of the cases or commentators cited by defendant in their brief in opposition to plain- tiffs' motion address the specific issue now before this court.

lawsuit. The defendant's motion to dismiss plaintiffs' state causes of action for lack of pendent jurisdiction is granted on the grounds of the substantial differences in the nature of the factual inquiries required under the federal and state claims, the inconsistency of the remedies requested under the state and federal claims and judicial economy. Finally, the plaintiffs' motion for default judgment on counts one and two of their complaint is denied on the condition that defendant answer those counts within 10 days from the date of this opinion and, in addition, pay to plaintiffs the costs and reasonable attorney's fees incurred by plaintiffs to bring the motion.

So ordered.